Formatted for Electronic Distribution Not for Publication

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT

Filed & Entered
On Docket
April 23, 2018

**In re:**

    **Robert and Tay Simpson,** Chapter 12
    **Debtors.** Case # 17-10442

*Appearances:* Rebecca Rice, Esq. Gary Franklin, Esq.
 Cohen & Rice Primmer Piper Eggleston & Cramer
 Rutland, Vermont Burlington, Vermont
 *For the Debtors* *For Wells Fargo Financial Leasing*

 *Bernard Lambek, Esq.* *Jan M. Sensenich, Esq.*
 *Zalinger Cameron & Lambek* *Office of the Chapter 12 Trustee*
 *Montpelier, Vermont* *Norwich, Vermont*
 *For Vermont Agricultural Credit Corp.* *For the Trustee*

 *Elizabeth Glynn, Esq.* *Melissa Ranaldo, Esq.*
 *Ryan Smith & Carbine* *U.S. Attorney's Office*
 *Rutland, Vermont* *Burlington, Vermont*
 *For People's United Bank, N.A.* *For the Internal Revenue Service*

## MEMORANDUM OF DECISION
### DENYING DEBTORS' MOTION FOR A STAY PENDING APPEAL

    Before the Court is the Debtors' motion, pursuant to Bankruptcy Rule 8007, for a stay pending appeal (doc. # 59) of this Court's order finding a prepetition waiver to be enforceable (doc. # 41), order granting relief from stay to Wells Fargo Financial Leasing, Inc. ("Wells Fargo") (doc. # 42), and order granting relief from stay to Vermont Agricultural Credit Corporation ("VACC") (doc. # 43). The Debtors argue they are entitled to a stay because they have a substantial possibility of success on appeal and will suffer irreparable harm if the Court denies them a stay (doc. # 59). Additionally, the Debtors assert the granting of a stay will not substantially harm either Wells Fargo or VACC, and the balance of public interest concerns weighs in favor of the imposition of a stay (doc. # 59).

Wells Fargo opposes the Motion, arguing the Debtors are unlikely to succeed in their appeal, will not suffer any irreparable injury without a stay, and have failed to show the granting of a stay is consistent with public interests (doc. # 63). Wells Fargo also contends the granting of a stay will cause it to suffer significant and continuing loss, through further erosion of its secured status.

Based upon the record in this case, the arguments presented at the March 2, 2018 hearing, and for the reasons set forth below, the Court finds the Debtors have failed to establish they are entitled to a stay pending appeal.

## JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered on June 22, 2012. The Court declares the Debtor's motion for a stay pending appeal, and Wells Fargo's objection to the motion, create a core proceeding for purposes of 28 U.S.C. § 157(b)(2)(A), over which this Court has constitutional authority to enter a final judgment.

## BACKGROUND

This is the second chapter 12 case the Debtors have filed in 6 years. They filed the earlier case on June 27, 2012; it was dismissed, on the Debtors' motion, just a couple of months later, on August 30, 2012. The Debtors sought dismissal of that case ten days after this Court entered an order determining that Wells Fargo, rather than the Debtors, owned certain buildings and equipment that were subject to a lease (case # 12-10564, doc. # 58).

The record indicates that, following dismissal of the first chapter 12 case, the Debtors and Wells Fargo were involved in a protracted and aggressively litigated foreclosure action in state court, then participated in a multi-day mediation session, and ultimately entered into a settlement agreement with an effective date of November 1, 2016 (the "Settlement Agreement"), see doc. # 11, Ex. G. Among other things, and most germane to the instant dispute, the Settlement Agreement included the following terms: (1) the Debtors owed $1,500,000 to Wells Fargo; (2) if the Debtors paid Wells Fargo within 18 months, they could satisfy the debt in full for a deeply discounted amount (with the discount reducing incrementally over that 18-month period); (3) if the Debtors complied with the Settlement Agreement, Wells Fargo would dismiss the foreclosure action; (4) if the Debtors did not comply with the Settlement Agreement, they consented to Wells Fargo entering a judgment in its favor in the amount of $1,500,000 and a decree for foreclosure; and (5) if the Debtors filed a bankruptcy case prior to satisfying the Wells Fargo debt, "they [would] not contest a motion filed by Wells Fargo requesting relief from the automatic stay, as set forth in 11 U.S.C. § 362(d), to allow Wells Fargo to enforce its rights hereunder and pursuant to the Judgement." Settlement Agreement, doc. # 11, Ex. G at ¶ 5(B). The Debtors and Wells Fargo also

2

executed mutual general releases that they would exchange upon full performance of the Settlement Agreement. The Debtors did not pay Wells Fargo within 18 months. Instead, the Debtors defaulted on their obligations under the Settlement Agreement. The senior mortgagee, VACC, issued a notice of sale by foreclosure and obtained an order scheduling a foreclosure sale of the Debtors' property on October 13, 2017 (doc. # 11).

On October 9, 2017, four days before the scheduled foreclosure sale, the Debtors filed the instant chapter 12 case. The Debtors asserted then, and continue to assert, they intend to sell some of the equipment and land securing the debts of VACC and Wells Fargo, and through these private sales, the Debtors will satisfy both mortgage debts in full – and sooner than if the creditors pursued an auction of the Debtors' property through the pending foreclosure action.

On November 3, 2017, Wells Fargo filed a motion for relief from stay (doc. # 11) which propounded three grounds for relief: (i) waiver, based upon the Settlement Agreement; (ii) lack of adequate protection, based upon the Debtors' failure to make any payments since January 2012; and (iii) lack of equity in property and the Debtors' inability to show the property is necessary to their effective reorganization. In response, the Debtors filed an abbreviated, one-page objection (doc. # 21) to Wells Fargo's motion asserting there was equity in the property and the property was necessary for their effective reorganization. The objection also stated the Debtors had two written contracts for the sale of portions of their real estate, which would result in proceeds of $625,000, there was another party interested in purchasing 200 acres of cropland for $750,000-$800,000, and they anticipated selling certain milking and farming equipment to generate additional funds to pay their secured debt. They concluded by declaring they had sufficient assets, and the ability, to pay off the secured debts and pay a dividend to their unsecured creditors through their chapter 12 case. On November 7, 2017, VACC filed a motion for relief from stay to pursue its rights against the Debtors' real and personal property (doc. # 14). The Debtors filed an objection to that motion (doc. # 22), reciting the same sales contracts information and conclusion set forth in their objection to the Wells Fargo motion. The Debtors subsequently filed a more detailed supplemental objection (doc. # 39) to the two relief from stay motions, and the parties filed a joint notice of evidentiary hearing (doc. # 37).

The Court set an evidentiary hearing on the two motions for relief from stay and the Debtors' objections for January 19, 2018.[1] All interested parties presented legal arguments and introduced

---

[1] Due to a scheduling error, the hearing was set and witnesses had made travel arrangements before the Court was aware the case trustee had an irreconcilable conflict and would be unable to appear or participate in the evidentiary hearing. He therefore filed a statement clarifying his position and supporting the Debtors' right to attempt to reorganize in this case (doc. # 38).

3

testimony and documentary evidence. At the conclusion of the hearing, the Court took the matter under advisement.

On January 25, 2018, the Court entered three orders: an order declaring the prepetition waiver of the Settlement Agreement to be enforceable (doc. # 41), an order granting Wells Fargo's motion for relief from stay (doc. # 42), and an order granting VACC's motion for relief from stay (# 43). On February 8, 2018, the Debtors filed three notices of appeal, appealing each of those orders (doc. ## 49, 50, 51).

On February 13, 2018, the Debtors filed an emergency motion for a stay pending appeal (doc. # 59) (the "Stay Motion"), and Wells Fargo filed an objection to that motion (doc. # 63). On March 2, 2018, the Court held a hearing on the Stay Motion, at which the chapter 12 trustee (the "Trustee"), as well as the Debtors, Wells Fargo, VACC, People's United Bank ("People's"), and the Internal Revenue Service (the "IRS") presented their positions. The Debtors and Trustee argued in support of the Stay Motion; Wells Fargo, VACC, and People's argued in opposition to the Stay Motion. The IRS took no position on the Stay Motion. The Court took the matter under advisement, subject only to the Debtors' and Wells Fargo's right to file post-hearing memoranda of law on the issue of whether the Debtors must post a bond if the Court grants the stay pending appeal. The parties filed their memoranda regarding the bond (doc. ## 78, 81) and the Court deemed the matter fully submitted as of March 15, 2018.

## DISCUSSION
### I. THE STAY PENDING APPEAL

The Bankruptcy Code provides that the filing of an appeal "does not stay any proceeding of the bankruptcy court . . . from which the appeal is taken, unless the respective bankruptcy court . . . in which the appeal is pending [] issues a stay of such proceeding pending the appeal." In re DuCharme, 2008 Bankr. LEXIS 764, *4 (Bankr. D. Vt. 2008) (quoting 28 U.S.C. § 158(d)(2)(D)). The movant must file a motion seeking a stay under Federal Bankruptcy Rule 8007, which provides, in pertinent part, as follows:

> In General. Ordinarily, a party must move first in the bankruptcy court for the following relief:
> (A) a stay of a judgment, order, or decree of the bankruptcy court pending appeal;
> (B) the approval of a supersedeas bond;
> (C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending; or
> (D) the suspension or continuation of proceedings in a case or other relief permitted by subdivision (e).

Fed. R. Bankr. P. 8007(a)(1).

4

The decision of whether to grant a stay of an order pending appeal "lies within the sound discretion of the court." In re Sabine Oil & Gas Corp., 548 B.R. 674, 681 (Bankr. S.D.N.Y. 2016); see also Int'l Christian Broad., Inc. v. Koper (In re Koper), 560 B.R. 68, 72 (Bankr. E.D.N.Y. 2016); In re General Motors Corp., 409 B.R. 24, 30 (Bankr. S.D.N.Y. 2009). "A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." Nken v. Holder, 556 U.S. 418, 433 (2009).

As the moving party, the Debtors bear the burden of showing they are entitled to a stay. See, e.g., Nken, 556 U.S. at 433-34 (ruling "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of [this] discretion"); United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc., 44 F.3d 1082, 1084 (2d Cir. 1995); Int'l Christian Broad., Inc. v. Koper (In re Koper), 560 B.R. 68, 73 (Bankr. E.D.N.Y. 2016).  The burden on the movant is a "heavy one."  In re DJK Residential, LLC, 2008 U.S. Dist. LEXIS 19801, *5 (S.D.N.Y. 2008) (citing In re Adelphia Commc'ns Corp., 333 B.R. 649, 659 (S.D.N.Y. 2005)).  See also In re Barretta, 560 B.R. 630, 632 (D. Conn. 2016); Private Sanitation Ass'n, 44 F.3d at 1084 ("A party seeking a stay of a lower court's order bears a difficult burden.").

The standard for obtaining a stay pending appeal "is well-established in this Circuit." Obuchowski v. Poulin (In re Stevens), 2001 Bankr. LEXIS 2189, *10 (Bankr. D. Vt. 2001). In deciding whether to issue a discretionary stay pending appeal of a bankruptcy court order, courts consider four factors: (1) whether the movant will suffer irreparable injury absent a stay; (2) whether a party will suffer substantial injury if a stay is issued; (3) whether the movant has demonstrated "a substantial possibility, although less than a likelihood, of success" on appeal; and (4) the public interests that may be affected. Int'l Christian Broad, Inc. v. Koper (In re Koper), 560 B.R. 68, 72 (Bankr. E.D.N.Y. 2016) (citing Hirschfeld v. Bd. of Elections in the City of N.Y., 984 F.2d 35, 39 (2d Cir. 1993)).

Although some courts in the Second Circuit have required the movant to establish all four factors, see, e.g., Bijan-Sara Corp. v. FDIC (In re Bijan-Sara Corp.), 203 B.R. 358, 360 (B.A.P. 2d Cir. 1996) (finding movant's "failure to satisfy one prong of the standard for granting a stay pending appeal dooms his motion"), "the Circuit and more recent cases have engaged in a balancing process with respect to the four factors, as opposed to adopting a rigid rule." In re Sabine Oil & Gas Corp., 548 B.R. 674, 681 (Bankr. S.D.N.Y. 2016). "[T]he Second Circuit has consistently treated the inquiry of whether to grant a stay pending appeal as a balancing of factors that must be weighed." In re Adelphia Communs. Corp., 361 B.R. 337, 347 (S.D.N.Y. 2007); see also Mohammed v. Reno, 309 F.3d 95, 101 (2d Cir. 2002) (reaching a

determination "[a]fter weighing the four factors relevant to the grant of a stay"). "The Second Circuit has 'also noted that the degree to which a factor must be present varies with the strength of the other factors, meaning that 'the more of one [factor] excuses less of the other.'" In re DuCharme, 2008 Bankr. LEXIS 764, *4 (Bankr. D. Vt. 2008) (quoting World Trade Center Disaster Site Litig., 503 F.3d 167, 170 (2d Cir. 2007)). Accordingly, this Court will examine the Debtors' arguments on each of the four factors in order of their importance in this case.

1. SUBSTANTIAL POSSIBILITY OF SUCCESS ON APPEAL

In a motion for stay pending appeal, "[t]he single most important factor is likelihood of success on the merits." In re Taub, 470 B.R. 273, 278 (E.D.N.Y. 2012). Since Hirschfeld v. Board of Elections in City of New York, 984 F.2d 35 (2d Cir. 1993), "the likelihood of success requirement has possibly evolved somewhat." In re Creative Fin., Ltd. (In Liquidation), 543 B.R. 498, 525 (Bankr. S.D.N.Y. 2016). In Hirschfeld, the Second Circuit "eliminated the more onerous requirement of 'likelihood of success on appeal.'" In re 473 West End Realty Corp., 507 B.R. 496, 501 (Bankr. S.D.N.Y. 2014) (quoting In re Country Squire Assocs. of Carle Place, L.P., 203 B.R. 182, 184 (B.A.P. 2d Cir. 1996)). Instead, the "substantial possibility of success" test applies and "is considered an intermediate level between 'possible' and 'probable' and is 'intended to eliminate frivolous appeals.'" Id. The probability of success that must be demonstrated "is inversely proportional to the amount of irreparable injury that the plaintiff will suffer absent the stay; in other words, 'more of one excuses less of the other.'" In re 473 West End Realty Corp., 507 B.R. at 502 (citing Mohammed v. Reno, 309 F.3d 95, 101 (2d Cir. 2002) (internal quotation omitted)).

Courts in the Second Circuit have not interpreted the Mohammed decision to have superseded or replaced the Hirschfeld articulation of the "likelihood of success" standard. Rather, courts frequently cite both cases as complementary to one another. See, e.g., Int'l Christian Broad, Inc. v. Koper (In re Koper), 560 B.R. 68, 75 (Bankr. E.D.N.Y. 2016); In re Creative Fin., Ltd. (In Liquidation), 543 B.R. 498, 525 (Bankr. S.D.N.Y. 2016); In re 473 West End Realty Corp., 507 B.R. 496, 501–502 (Bankr. S.D.N.Y. 2014); In re Adelphia Communs. Corp., 361 B.R. 337, 347 (S.D.N.Y. 2007).

A movant seeking a stay "need not demonstrate that it will probably succeed on appeal," because, if that were the standard, few courts would ever grant a stay. Blossom South, LLC v. Sebelius, 2014 U.S. Dist. LEXIS 6474, *8 (W.D.N.Y. 2014). However,

> the appellant must show more than simply some chance of success on appeal; since the appellant's arguments have already been considered and rejected by the court, the appellant must "demonstrate a substantial showing of likelihood of success, not merely the possibility of success, because [the appellant] must convince the

6

> reviewing court that the lower court, after having the benefit of evaluating the relevant evidence, has likely committed reversible error."

Id. at **10–11 (emphasis original) (quoting In re Forty-Eight Insulations, Inc., 115 F.3d 1294, 1301 (7th Cir. 1997)). The Debtors must therefore establish they have at least a substantial possibility – though not a likelihood – of success on the merits of their appeal to prevail on this crucial factor. The Court will review whether the Debtors have a substantial possibility of success in each of Debtors' three appeals separately.

### A. DO THE DEBTORS HAVE A SUBSTANTIAL POSSIBILITY OF SUCCESS ON APPEAL OF THE WAIVER ORDER?

The Court's first order declared the Debtors' prepetition waiver of their right to oppose Wells Fargo's motion for relief from stay was enforceable (doc. # 41) (the "Waiver Order"). In the Stay Motion, the Debtors posit several grounds they allege warrant reversal of this determination and assert they are entitled to a stay pending appeal because they are likely to succeed in their appeal of this order.

The Debtors' primary argument in support of a stay of the Waiver Order challenges this Court's reliance on the rationale of In re Frye, 320 B.R. 786, 796 (Bankr. D. Vt. 2005). The Debtors assert Frye is inapplicable because Frye was a chapter 13 case and this is a chapter 12 case. Debtors argue that, as chapter 12 debtors, they "should be treated as debtors-in-possession," which they contend would "create a different analysis as to the validity of a prepetition waiver of rights" (doc. # 59 at 8). They insist the correct approach is set out in In re Pease, 195 B.R. 431 (Bankr. D. Neb. 1996), which holds such waivers are not enforceable against debtors-in-possession. However, their reliance on this case is misplaced as the Pease decision has not been followed, or even cited, by a single court in the Second Circuit.

The Pease court found prepetition waivers are unenforceable for chapter 11 debtors-in-possession because "the Chapter 11 debtor is a separate and distinct entity from the pre-bankruptcy debtor … [and] a debtor may not waive the automatic stay [] until after the bankruptcy case is commenced and the debtor is acting in the capacity as debtor in possession." 195 B.R. at 433. The Debtors reason that since chapter 12 is more akin to chapter 11 than chapter 13, and Pease holds that prepetition waivers are unenforceable against chapter 11 debtors, the waiver is unenforceable against these chapter 12 Debtors. However, this syllogism rests on flawed premises. Pease is neither controlling authority in this jurisdiction nor the majority position generally. For example, in In re BGM Pasadena, LLC, 2016 U.S. Dist. LEXIS 72825 (C.D. Cal. 2016), the district court found the chapter 11 debtor-in-possession's prepetition waiver was enforceable and cited favorably this Court's analysis in Frye. Id. at **9–15. Additionally, in In re A. Hirsch Realty, LLC, 2018 Bankr. LEXIS 1140 (Bankr. D. Mass. 2018) and In re Desai, 282 B.R. 527 (Bankr. M.D. Ga. 2002), the bankruptcy courts found a chapter 11 debtor's prepetition agreement not to

7

contest a creditor's relief from stay in any subsequent case was enforceable against that chapter 11 debtor. Second, contrary to the Debtors' arguments, other courts that have considered this question have ruled prepetition waivers of the automatic stay to be enforceable against chapter 12 debtors. See In re Blocker, 411 B.R. 516 (Bankr. S.D. Ga. 2009).

The Debtors also argue they will prevail on appeal of the Waiver Order because the waiver they executed was actually an impermissible waiver of their right to bankruptcy relief, and thus unenforceable, as held in DB Capital Holdings, LLC, 454 B.R. 804, 816 (Bankr. D. Colo. 2011). The Debtors describe that case as standing for "the proposition that 'enforcement of a prepetition waiver of the automatic stay… too closely approximates the more reviled prohibition against filing for bankruptcy protection'" to be enforceable (doc. # 59 at 9). The defect in this argument is that the case does not say that. In their Stay Motion, the Debtors omitted a critical part of the quotation from the DB Capital Holdings case. The court quoted there a passage from In re Jenkins Court Assoc. Ltd. P'ship, 181 B.R. 33 (Bankr. E.D. Pa. 1995), which said:

> In the absence of a complete evidentiary hearing – wherein other grounds for modifying the stay are established, the Court believes that enforcement of the prepetition waiver of the automatic stay in this instance too closely approximates the more reviled prohibition against filing for bankruptcy petition.

Id. at 37 (emphasis added); see also DB Capital Holdings, 454 B.R. at 816. Contrary to the Debtors' representation, Jenkins and DB Capital Holdings do not stand for the proposition that enforcement of prepetition waivers of the automatic stay are per se unenforceable. Rather, they hold such waivers should not be enforced without the court first conducting an evidentiary hearing at which both the debtor and the party seeking to enforce the waiver have an opportunity to present evidence on all grounds related to modification of the stay. This Court satisfied that requirement: it held a half-day evidentiary hearing on January 19, 2018 (doc. ## 41, 73), at which both the Debtors and Wells Fargo presented witnesses, elicited testimony, and introduced documentary evidence. Thus, this argument, premised on the Debtors' reading of DB Capital Holdings, fails both because the Debtors' interpretation and representation of the case's holding is incorrect and because this Court has met the criteria that case established for enforcement of a prepetition waiver.

In this same vein, the Debtors next contend the first sentence of ¶ 5(B) of the waiver provision they executed defines default under the Settlement Agreement as "the filing of a voluntary or involuntary bankruptcy" by the Debtors, and constitutes an impermissible bar to bankruptcy relief, thereby rendering the whole waiver provision invalid (doc. # 59 at 10). The first sentence is not, as the Debtors argue, an agreement not to declare bankruptcy. Instead, the sentence defines one of the events of default under the

8

Settlement Agreement, which in turn triggers one of Debtors' obligations. If the Debtors file for bankruptcy, they are then obliged to "not contest a motion filed by Wells Fargo requesting relief from stay" (doc. # 41). The Debtors' proposed interpretation of this sentence is, at best, strained. Many courts have approved prepetition waivers with language remarkably similar to that of ¶ 5(B) in the Debtors' agreement. See, e.g., In re BGM Pasadena, LLC, 2016 U.S. Dist. LEXIS 72825 (C.D. Cal. 2016);[2] In re Excelsior Henderson Motorcycle Manufacturing Company, Inc., 273 B.R. 920 (Bankr. S.D. Fla. 2002);[3] In re Shady Grove Tech Ctr. Assocs. Ltd. Pshp., 216 B.R. 386, 389 (Bankr. D. Md. 1998).[4] The Debtors' argument, based upon their view of the first sentence of ¶ 5(B), is unsupported by any relevant case law and, in fact, the weight of authority weighs against the interpretation they urge.

Lastly, contrary to their averments, the Debtors here, as in other cases, "only agreed to waive a single benefit of the Bankruptcy Code, rather than waiving bankruptcy protection entirely." In re Alexander SRP Apts., LLC, 2012 Bankr. LEXIS 2466, *17 (Bankr. S.D. Ga. 2012). The Debtors still received the benefit of the automatic stay when the case was filed, both as to other creditors and as to Wells Fargo, and "retained the right to a hearing, permitting [the Debtors] to present evidence that the [waiver] should not be enforced, before any determination that the stay should be lifted." Id. at *18. The Court held a hearing on both the motion to enforce the waiver and the two motions for relief from stay, and found the waiver provision the Debtors executed to be enforceable (doc. # 41). The Debtors had 77 days in which to prepare for the hearing, no limitation on the time available for presenting evidence in

---

[2] The prepetition waiver in that case reads: "[I]n the event of the filing of any [subsequent] bankruptcy case [by Debtor], Debtor agrees that sufficient cause exists for the bankruptcy court having jurisdiction over such bankruptcy case to grant Creditors relief from the automatic stay based upon, among other things, lack of adequate protection. Debtor irrevocably consents and waives any right to object, and Creditors shall be entitled, to an order granting relief from any and all stays, including the automatic stay imposed by 11 U.S.C. § 362 or equitable relief under 11 U.S.C. § 105, or other applicable law, so as to permit Creditors to foreclose upon the Property and to exercise any and all other rights and remedies of Creditors under applicable law, this Agreement or any other Loan Document." In re BGM Pasadena, LLC, 2016 U.S. Dist. LEXIS 72825, **9–10 (C.D. Cal. 2016).

[3] The prepetition waiver in that case reads: "21. Consent to Relief from Stay. Company hereby agrees that, in the event the Company (by its own actions, or the action of any of its shareholders or creditors, (if applicable)), on or before September 14, 2003, files or has filed against it (with an order for relief being entered) another case under the Bankruptcy Code of 1978, as previously or hereafter amended, Lender shall thereupon be entitled to relief from the automatic stay of Section 362 of Title 11 of the U.S. Code, as amended, on or against the exercise of the rights and remedies available to the Lender under this Note and the Company hereby waives the benefits of such automatic stay and consents and agrees to raise no objection to such relief." In re Excelsior Henderson Motorcycle Manufacturing Company, Inc., 273 B.R. 920, 921–22 (Bankr. S.D. Fla. 2002).

[4] The court found that the prepetition waiver was a "three-tiered" waiver of the right to protection against foreclosure in a subsequent bankruptcy filing: "The agreement provides, in essence, that the Debtor promises not to file a petition in bankruptcy before November 1, 1998. Second, the agreement provides that if the Debtor should become a debtor in bankruptcy, notwithstanding the aforesaid promise, that the stay imposed by 11 U.S.C. § 362(a) is waived as to actions by the Lender against the property. Finally, the agreement provides that if the stay does apply as against foreclosure by the Lender, the Debtor waives the right to defend against a motion for relief from the stay." In re Shady Grove Tech Ctr. Assocs. Ltd. Pshp., 216 B.R. 386, 389 (Bankr. D. Md. 1998).

9

opposition to enforcement of the prepetition stay waiver, and the Court construed the waiver only with respect to Wells Fargo's position as a secured creditor, within the scope of the parties' prepetition agreement. The Debtors have cited no case law authority for the proposition that a prepetition waiver should not be enforced when doing so would result in the Debtors being unable to defend against other stay relief motions, or even when it would prevent the Debtors from being unable to reorganize under chapter 12.[5]

In sum, none of the Debtors' arguments underlying their appeal of the Waiver Order are supported by – or even consistent with – the weight of authority on the issue, and thus do not have a substantial possibility of succeeding on appeal.

### B. DO THE DEBTORS HAVE A SUBSTANTIAL POSSIBILITY OF SUCCESS ON APPEAL OF THE WELLS FARGO RELIEF FROM STAY ORDER?

The Debtors also argue on appeal that this Court failed to properly apply § 362(d) in granting Wells Fargo and VACC relief from stay. The Court begins with a general review of this argument and then addresses each Order.

The bankruptcy statute governing the two relief from stay motions states:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>   (A) the debtor does not have an equity in such property; and
>   (B) such property is not necessary to an effective reorganization;
> …

11 U.S.C. § 362(d)(1)-(2).

In its relief from stay rulings, this Court identified enforceability of the waiver as sufficient "cause" to grant Wells Fargo relief from stay under § 362(d)(1), and addressed the statutory requirements under § 362(d)(2) to articulate an alternative basis for granting this relief. After determining the prepetition waiver was enforceable, the Court made separate, additional findings that entitled Wells Fargo to relief from stay under § 362(d)(2). Based upon the evidence presented at the half-day evidentiary

---

[5] While truly unfortunate, and certainly not determinative, the Court cannot help but observe that these consequences were evident and foreseeable at the time the Debtors executed the prepetition agreement. In fact, the Debtors giving up the collateral for Wells Fargo's loans was precisely the price the Debtors paid to bring the protracted and "scorched earth" style litigation to an end and in consideration for the agreement, the Debtors gained, among other things, the opportunity to satisfy the Wells Fargo debt at a dramatic discount.

10

hearing, the Court found the Debtors (i) had no equity in the subject property, (ii) had not demonstrated they would be able to reorganize within a reasonable time to meet the standard for showing the property was necessary to an effective reorganization, see In re Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 375–76 (1988), and therefore (iii) could not defeat relief from stay under the second prong of § 362(d) (doc. # 42).[6] While the Court also found the Debtors had not adequately protected Wells Fargo's interest in the subject property, that was not an essential finding, since lack of adequate protection is simply one example of "cause" and the Court had already found "cause" in the form of the prepetition waiver (doc. # 42).

The Debtors' argument with respect to the Wells Fargo relief from stay order again points to the inapplicability of the Frye rationale. They contend the waiver provision in their agreement precludes the Debtors from contesting a relief from stay motion, and therefore, the Court is limited to "application of the criteria outlined in § 362(d) in order to determine if relief from stay should be granted" (doc. # 59 at 11), but later assert, "[i]f the pre-petition waiver automatically terminated the stay, then the Bankruptcy Court need not have made a determination as to the application of § 362(d) to Wells Fargo" (doc. # 59 at 13). Both arguments are without merit for the same reasons. The Debtors misinterpret the holding of Frye, and related cases, mistakenly arguing Frye held that the prepetition waiver in question "automatically terminated the debtors' rights to an automatic stay" (doc. # 59 at 11). On the contrary, Frye held that such waivers are "neither per se enforceable, nor self-executing." 320 B.R. at 790. Because waivers of relief from stay are not self-executing, "[e]nforcement of the waiver always depends upon final review by a bankruptcy court after notice and a hearing." In re Alexander SRP Apts., LLC, 2012 Bankr. LEXIS 2466, *20 (Bankr. S.D. Ga. 2012) (citing Frye, 320 B.R. at 791). Frye and similarly reasoned cases have concluded, "a prepetition agreement waiving defenses to relief from stay may be considered as a factor in deciding whether relief from stay for cause should be granted." In re 4848, LLC, 490 B.R. 343, 348 (Bankr. E.D. Wis. 2013) (citing In re Desai, 282 B.R. 527, 532 (Bankr. M.D. Ga. 2002)). Enforcement of a forbearance agreement "does not in itself" mean that the automatic stay will be lifted, but "simply means that [the] Court will give no weight to a Debtor's objection as this conflicts with and is in derogation of the previous agreement." In re Cheeks, 167 B.R. 817, 819 (Bankr. D. S.C. 1994).

The Debtors also argue this Court erred by applying § 361(3), rather than § 1205, in assessing Wells Fargo's right to relief under § 362(d)(1). This argument is a red herring. Although § 1205(a) states,

---

[6] It is noteworthy that the Plan the Debtors filed subsequent to entry of the subject Orders acknowledges a debt of $1.5 million to Wells Fargo, thus undermining their own argument regarding potential equity in the property. See doc. # 74.

11

"Section 361 does not apply in a case under this chapter," applicable case law has substantially diminished the import of this provision. After chapter 12 had been enacted and in effect for more than a year, the Supreme Court's decision in In re Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365 (1988) "overruled those cases that required the debtor to reimburse a creditor for lost opportunity costs as an element of providing adequate protection" and as a result of Timbers, "the interest subject to protection under section 361 is now the same as the interest subject to protection under section 1205." COLLIER ON BANKRUPTCY ¶ 1205.01. The Timbers decision "thus effectively eliminates any meaningful difference between sections 361 and 1205(b)," and motions for relief from stay "are dealt with under chapter 12 in essentially the same fashion as motions brought in cases under other chapters of the Code." Id. See also In re Glenn, 181 B.R. 105 (Bankr. E.D. Okla. 1995) (relief from stay denied upon finding of equity cushion, with no mention of § 1205). The Debtors' legal argument premised on a critical distinction between § 361 and § 1205 is without merit and serves only to distract.

Moreover, this is a question of fact and regardless of whether the Court were to measure the sufficiency of adequate protection the Debtors have provided to Wells Fargo using § 1205(a) or § 361, the Debtors have failed to demonstrate they provided adequate protection. Their sole allegation and purported proof on this point is the Debtors' intent to sell Wells Fargo's collateral through orderly sales of portions of the real estate collateral and unnecessary equipment collateral, in a manner they believe will result in a larger recovery than Wells Fargo could obtain through a foreclosure. The Debtors presented no proof of any non-contingent sales contracts for either land or equipment, and failed to respond to the Wells Fargo arguments that a piecemeal approach to land sales would drastically reduce the value of the remaining land that secures Wells Fargo's debt. In sum, the Court found the Debtors did not offer any proof they had provided adequate protection of Wells Fargo's interest.

Contrary to the assertions of the Debtors, Wells Fargo presented credible evidence that the value of property is declining. The Debtors' attempts to diminish the probative value of the 2017 appraisal failed. Appraiser Robert Guay testified credibly at the January 19th hearing that much of the Debtors' milking equipment suffered from deferred maintenance and was only of average quality (doc. # 73). Wells Fargo argued persuasively that its secured position continues to erode as interest continues to accumulate on the debt of senior lienholder VACC, and the Debtors continue the years-long practice of making no payments to Wells Fargo. See doc. # 11; see also COLLIER ON BANKRUPTCY ¶ 1205.04 (adequate protection may apply "when periodic payments are necessary to protect a lienholder from erosion of its interest from interest accrual on senior obligations") (citing In re Rupprect, 161 B.R. 48

12

(Bankr. D. Neb. 1993)). As such, the Court had a sufficient factual record upon which to grant relief from stay to Wells Fargo under the additional grounds of lack of adequate protection under § 362(d)(1).

Next, the Debtors contest the Court's decision that stay relief was warranted under § 362(d)(2). That statute states a party in interest is entitled to relief if "(A) the debtor does not have equity in such property; and (B) such property is not necessary to an effective reorganization." In a footnote, the Debtors challenge the Court's finding that there was no equity in the property. This argument is at odds with the Debtors' position relative to their chapter 12 plans, in which they concede they owe Wells Fargo approximately $1.5 million (see doc. ## 68, 74).[7] For this reason, the Debtors' position regarding equity in the property is unpersuasive.

The Debtors also argue the Court "never [made] a determination as to whether the property is necessary for reorganization and therefore fail[ed] to establish the necessary second part of the § 362(d)(2) analysis" (doc. # 59 at 16). This argument is not legally sound. Once the movant under § 362(d)(2) "establishes that he is an undersecured creditor, it is the burden of the debtor to establish that the collateral at issue is 'necessary to an effective reorganization.'" In re Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 375 (1988) (emphasis original). Under § 362(d)(2)(B), the test of whether property is 'necessary to an effective reorganization', as articulated by Timbers, is a two part test: (1) whether the property is needed for the execution of the Debtors' plan, and (2) whether the Debtors' proposal amounts to a plan "that is in prospect." See Versus Bank of Commerce v. Fox (In re Fox), 2013 Bankr. LEXIS 653 (Bankr. D. Colo. 2013). What an "effective reorganization that is in prospect" means is that "there must be 'a reasonable possibility of a successful reorganization within a reasonable time." Timbers, 484 U.S. at 375–76. The Debtors argue the Court's finding that the Debtors did not show an ability to reorganize within a reasonable time is an erroneous application of the standard set forth under § 362(d)(3). In actuality, the Court's finding is pertinent to Part (B) of its analysis under § 362(d)(2). After considering "the totality of evidence" with respect to the Debtors' chapter 12 plans, and particularly the highly speculative nature of the projected income streams and proposed amortization periods of up to forty years, the Court found the Debtors had not met their burden of demonstrating a reasonable possibility of a successful reorganization within a reasonable time. Combined with the lack of equity, the record supported the Court's finding that relief from stay was warranted under § 362(d)(2).

---

[7] The Debtors' position that their property is not declining in value is further undercut by representations made at the hearing held on the Stay Motion on March 2, 2018. At the hearing, attorneys for Wells Fargo and People's represented that the Debtors had previously testified at state court hearings that the milking equipment was now essentially without value (audio available at doc. # 79 at 37:58).

13

Most importantly, this Court's conclusions as to the additional and alternative grounds for granting relief from stay under § 362(d) "are immaterial here, in light of the Court's conclusion regarding the existence of ample 'cause' for relief" in finding the prepetition waiver enforceable." In re BGM Pasadena, LLC, 2016 U.S. Dist. LEXIS 72825, **19–20 (C.D. Cal. 2016). Thus, even if the Debtors had a substantial possibility of success on appeal of the relief from stay order under adequate protection or § 362(d)(2) grounds, "any such likelihood of success would not warrant a stay pending appeal, so long as the waiver remains likely to be enforced." Id. at *20.

### C. DO THE DEBTORS HAVE A SUBSTANTIAL POSSIBILITY OF SUCCESS ON APPEAL OF THE VACC RELIEF FROM STAY ORDER?

The Debtors allege the VACC order (doc. # 43) is vulnerable to reversal on appeal because it "cited sub-sections of the Code, which it did not do in the Wells Fargo Order, and therefore seemed to be premised on slightly different arguments than the granting of relief from stay to Wells Fargo" (doc. # 59 at 16–17). However, despite any differences in format, the orders granting relief from stay to Wells Fargo and VACC (doc. ## 42, 43), were both based upon the arguments the parties presented in their papers and at the January 19, 2018 evidentiary hearing.

VACC filed its motion for relief from stay within four days of when Wells Fargo filed its motion, and therein VACC "support[ed] Wells Fargo's Motion and adopt[ed] the factual recitations and arguments set forth in Wells Fargo's Motion, to the extent applicable to VACC's position" (doc. # 15). Attorneys for VACC and Wells Fargo both played an active role in the January 19th hearing, coordinating their evidence and testimony to achieve a common end. The evidence supporting the granting of relief from stay to Wells Fargo equally favored the granting of relief from stay to VACC, specifically the evidence concerning the Debtors' lack of equity in the property, showing lack of adequate protection for secured creditors, and demonstrating the Debtors' inability to successfully reorganize within a reasonable time. It is within their discretion for bankruptcy courts to decide two creditors' motions for relief from stay concurrently and based upon the same or similar evidence. See, e.g., In re Russell, 567 B.R. 833 (Bankr. D. Mont. 2017); In re Feldman, 309 B.R. 422 (Bankr. E.D.N.Y. 2004).

In their Stay Motion, the Debtors aim the same arguments at VACC's relief from stay order as they direct toward the Wells Fargo relief from stay order, namely, the inapplicability of § 361 to determining adequate protection in a chapter 12 case, the misapplication of § 362(d)(3) language to a determination under § 362(d)(2), and the Debtors' equity in the property (doc. # 59 at 17). For the reasons discussed above, supra Part 1(B), the Court finds these arguments, reliant upon the same evidence, are no more likely to succeed in the appeal of the VACC stay relief order.

14

Furthermore, the VACC order (doc. # 43) was entered subsequent to, and based upon, the order granting relief from stay to Wells Fargo (doc. # 42). Upon entry of an order granting relief from stay to a secured creditor, stay relief is also granted to other parties holding liens on the subject property, pursuant to Local Rule 4001-1(h)(2). Here, stay relief was granted to secondary lien holders in the Wells Fargo order, "allowing such lien holder to pursue its rights, to bid at a sale, to redeem, and/or to enforce its lien in connection with any action taken by the movant against the subject property pursuant to this order" (doc. # 42). The Court referenced this additional basis for granting stay relief to VACC in its order, finding good cause to grant VACC's motion based in part "upon the granting of relief from stay in favor of Wells Fargo Leasing, Inc. in this case" (doc. # 43).

The Court had multiple, alternative grounds for granting stay relief to VACC and therefore, the Debtors do not have a substantial possibility of succeeding on appeal of the VACC stay relief order.

## 2. IRREPARABLE HARM

As one court has described it, "[a] showing of irreparable harm … must be neither remote nor speculative, but actual and imminent." In re Richmond, 2014 Bankr. LEXIS 4332, *10 (Bankr. E.D.N.Y. 2014). The Debtors argue that because the property encumbered by the Wells Fargo and VACC secured claims consists "of the entirety of [their] working land," the denial of a stay pending appeal would leave them with "no other land on which to farm or conduct commercial activity" (doc. # 59 at 3). In essence, the Debtors argue the appeal itself "may become moot in the absence of a stay pending appeal," as the land would be foreclosed upon and sold during the pendency of the appeal. In re Adelphia Communs. Corp., 361 B.R. 337, 347 (S.D.N.Y. 2007). This is a compelling argument.

In the event this Court denies the Stay Motion, the Debtors suggest the District Court may apply the 'mootness rule' to their appeal. That rule provides "[a] debtor's failure to obtain a Stay Pending Appeal renders an appeal moot if assets in which the creditor had an interest are sold in foreclosure." In re First Mortg. Atrium Bldg., Ltd., 92 B.R. 202, 203 (E.D. Tex. 1988). The bankruptcy courts in the Second Circuit are divided as to whether mootness of an appeal is enough to show irreparable injury. Compare In re Richmond, 2014 Bankr. LEXIS 4332, at *10 ("The Debtor's claim that he may be forced to terminate the business conducted at the Property if the foreclosure sale takes place is not sufficient to satisfy the burden to show irreparable harm."); In re Adelphia Communs. Corp., 361 B.R. at 347 with In re 473 West End Realty Corp., 507 B.R. 496, 507 (Bankr. S.D.N.Y. 2014) ("Without resolving the split of authority, the Court notes that [the movant] may arguably suffer harm if this stay pending appeal is not granted as its appeal will most likely be rendered moot by the foreclosure sale."); In re Country Squire Assocs. of Carle Place, L.P., 203 B.R. 182, 183 (B.A.P. 2d Cir. 1996) ("It is apparent that absent a stay pending appeal, the

15

foreclosure sale will proceed and the appeal will be rendered moot. Obviously, that result would be the 'quintessential form of prejudice' to [the Debtor].").

Though generally taking the position that "resumption of collection activities during the pendency of an appeal in and of itself does not constitute irreparable harm," in the context of chapter 12 case, the Bankruptcy Court for the Southern District of Ohio sided with those courts finding that, due to the "special nature of the 'family farm' and Chapter 12's general objective of aiding farmers in retaining their lands, . . . foreclosure or replevin of farmland and farming machinery may constitute irreparable injury." In re Pertuset, 2012 Bankr. LEXIS 2160, **9, 11 (Bankr. S.D. Ohio 2012); see also In re Mader, 100 B.R. 989, 991 (N.D. Ill. 1989); In re Beswick, 98 B.R. 904, 906 (N.D. Ill. 1989).

This Court agrees with the Pertuset conclusion that, "while not entirely convinced that monetary damages may not adequately address any harm resulting from a wrongful foreclosure or replevin of family farm property, the asserted harm may in fact be irreparable from the Debtors' perspective and therefore this factor weighs in favor of the Debtors." In re Pertuset, 2012 Bankr. LEXIS 2160, at *12. This finding alone, however, is not sufficient to warrant the granting of a stay pending appeal. The Court must weigh this against findings with respect to the other three factors. See Bank of N.Y. Mellon v. Bell, 2015 U.S. Dist. LEXIS 60926, *6 (D. Conn. 2015).

### 3. HARM TO NON-MOVANT AND OTHER PARTIES

In addition to showing a substantial possibility of success on the merits and irreparable harm, the Debtors must establish "the non-moving party or other parties will not suffer substantial harm if the stay is granted. In other words, the moving party must show that the balance of harms tips in favor of granting the stay." In re 473 West End Realty Corp., 507 B.R. 496, 507 (Bankr. S.D.N.Y. 2014). "This factor is the other side of the coin to irreparable harm. The court must measure the harm to the non-movant ... and balance the harm incurring to all parties." In re Pertuset, 2012 Bankr. LEXIS 2160, *11 (Bankr. S.D. Ohio 2012) (quoting In re Lickman, 301 B.R. 739, 742 (Bankr. M.D. Fla. 2003)).

The balancing imposes contrasting burdens on the parties. The Debtors must show they would suffer "irreparable harm" if the stay pending appeal is denied, while Wells Fargo need only demonstrate it would suffer "substantial harm" if the stay were granted, to meet their respective burdens under the applicable test. See In re Mader, 100 B.R. 989, 991 (N.D. Ill. 1989). Courts have found creditors are sufficiently protected where the creditor's interests "are totally secured or in some instances oversecured." Id. However, in the case of an undersecured creditor, courts have made a finding of substantial harm where interest, real estate tax debts and additional expenses were continuing to accrue, to the detriment of the party opposing the stay. See In re 473 West End Realty Corp., 507 B.R. at 508.

Moreover, in <u>Pertuset</u>, the court underscored the importance of the long history of dealings between the parties in balancing the harms. It found the debtors "have been afforded two chances to reorganize their debts and save their farm over a collective period of greater than two years," whereas the creditors "have not been paid for an extended period of time and have expended significant time and resources in seeking to enforce their asserted contractual and state law rights." <u>In re Pertuset</u>, 2012 Bankr. LEXIS 2160, *14 (Bankr. S.D. Ohio 2012).

As in <u>Pertuset</u>, the Debtors have had numerous opportunities to reorganize their debts over the course of many years, both in and outside of the bankruptcy court. In light of the prior bankruptcy case, the extended litigation that followed, the sophisticated Settlement Agreement between the parties, the proof introduced at the evidentiary hearing, and the continuing accrual of interest and attorney's fees on the senior mortgage debt, here too, the balance of harms tips in favor of denying the stay.

### 4. THE PUBLIC INTEREST

The final factor examines "the interest of third-parties who act in reliance on the bankruptcy court's ruling." <u>In re 473 West End Realty Corp.</u>, 507 B.R. 496, 507 (Bankr. S.D.N.Y. 2014) (quoting <u>Beneficial Homeowner Serv. Corp. v. Moreau (In re Moreau)</u>, 135 B.R. 209, 215 (N.D.N.Y. 1992)). This Court discerns two salient policy concerns in the instant request for a stay: encouraging parties to seek out of court settlements and encouraging family farmers to use chapter 12 bankruptcy to save their farms.

The Debtors, through an aggressively negotiated agreement with Wells Fargo, acquired the right to satisfy the Wells Fargo debt of approximately $1.5 million for a payment of approximately half that sum, with gradually increasing payoff figures over a period of eighteen months (doc. # 11, Ex. G). Additionally – and perhaps just as importantly – the parties' agreement "served the salutary purpose of reaching finality in litigation, judicial economy, and compromise." <u>In re Blocker</u>, 411 B.R. 516, 520 (Bankr. S.D. Ga. 2009). This Court agrees with those courts that have found that "enforcement of such agreements furthers the public policy in favor of encouraging out of court restructuring and settlements." <u>In re Excelsior Henderson Motorcycle Manufacturing Company, Inc.</u>, 273 B.R. 920, 924 (Bankr. S.D. Fla. 2002); <u>see also</u> <u>In re Cheeks</u>, 167 B.R. 817, 819 (Bankr. D. S.C. 1994). Failing to enforce an agreement that the Debtors negotiated over a multi-day period and executed only after consultation with their sophisticated commercial counsel, "would be inconsistent with this Court's policy of favoring settlement agreements," <u>In re Excelsior</u>, 273 B.R. at 924, and "would make a charade of the entire process and lead parties to be disinclined to settle cases." <u>In re Blocker</u>, 411 B.R. at 520.

The Court next scrutinizes which party's public interest argument is stronger with respect to encouraging use of chapter 12. There are two potentially conflicting aspects to this: what benefits the

17

individual farmer in a given dispute, on the one hand, and what is fairer to the other chapter 12 constituents and most likely to sustain the viability of chapter 12 relief generally, on the other. While it is true that chapter 12 of the Bankruptcy Code "signifies an important public interest in giving 'family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land,'" this objective is carefully balanced against the equally important public interest of "'preventing abuse of the [bankruptcy] system and ensuring that farm lenders receive a fair payment.'" In re Pertuset, 2012 Bankr. LEXIS 2160, *14 (Bankr. S.D. Ohio 2012) (quoting Justice v. Valley National Bank, 849 F.2d 1078, 1090 (8th Cir. 1988)). As this Court recently observed, in order for chapter 12 to remain a viable reorganization option for family farmers, creditors must also be persuaded the process is fair to all parties.

> The legislative history of Chapter 12 makes clear that it is an important national priority to protect farms:
>
>> Chapter 12 is tailored to meet the unique economic realities of family farming during times of severe economic crisis. With chapter 12, Congress created a chapter of the bankruptcy code that provides a framework to prevent family farms from going out of business…The family farm is the backbone of the rural economy…all over the Nation. Without chapter 12 protection, a family famer has little choice but to liquidate all assets, sell the land, equipment, crops and herd to pay off creditors if an economic crisis hits. This means losing the farm. Losing a farm means losing a supplier of food and a way of life. When a family decides it can no longer afford to farm, many times that farm is lost forever to development or sprawl.
>
> Chapter 12 provides crucial and extraordinary relief to farmers and fisherman who qualify for it. In order for Chapter 12 to work, however, creditors must be persuaded that the remedies set out in Chapter 12 will be available if Chapter 12 debtors fail to meet their obligations under confirmed plans. Courts must implement Chapter 12 in a manner which treats creditors fairly and ensures results that are predictable and consistent with the Bankruptcy Code. See In re Fleishman, 372 B.R. 64, 71 (Bankr. D. Or. 2007) (holding that one of the purposes of Chapter 12 is to "insure that creditors receive a 'fair' deal under the debtor's plan.").

In re Milky Way Organic Farm, LLC, 2017 Bankr. LEXIS 417, *18 (Bankr. D. Vt. 2017) (quoting 146 Cong. Rec. H 11702 (1999) (statement by Rep. Baldwin)).

The Debtors presented a new (third) plan after filing their Stay Motion (doc. # 74). The onus is on the Debtors to persuade creditors it is in their best interest to support that plan. That is independent of whether the Court should grant the Debtors a stay pending appeal.

Under the facts of this case, enforcing the Settlement Agreement advances both the interest in encouraging settlements, and the interest in making it more likely farmers and their creditors will perceive

18

chapter 12 as a viable option for farm reorganization. Therefore, the Court concludes the applicable public interest concerns weigh decisively in favor of Wells Fargo.

## II. THE BOND

Having found that the Debtors have not met their burden for a stay pending appeal, the Court will address only briefly the parties' conflicting positions with regard to the Debtor's obligation to post a bond. Bankruptcy Rule 8007 "provides that the Court may condition the issuance of a stay upon the furnishing of a supersedeas bond or other appropriate security." In re Roussos, 2017 Bankr. LEXIS 389 (Bankr. C.D. Cal. 2017) (citing In re Swift Aire Lines, Inc., 21 B.R. 12, 14 (B.A.P. 9th Cir. 1982)). The Debtors argue that if a stay is granted, they should be excused from posting a bond. Wells Fargo insists that if a stay is granted, Rule 8007 requires the Debtors to post a bond in an amount equal to the amount of Wells Fargo's judgment.

The case law interpreting Rule 8007 makes clear that bankruptcy courts have discretion in determining whether to waive the bond. "Moreover, where the movant seeks the imposition of a stay without a bond, 'the applicant has the burden of demonstrating why the court should deviate from the ordinary full security requirement.'" In re Sabine Oil & Gas Corp., 548 B.R. 674, 681 (Bankr. S.D.N.Y. 2016) (quoting In re DJK Residential, LLC, 2008 U.S. Dist. LEXIS 19801, *6 (S.D.N.Y. 2008)). Applying this case law to the facts of this case persuades the Court that the Debtors would need to post a bond, if a stay were granted, in an amount equal to the amount Wells Fargo has at risk, based upon the most recent appraisal, the current amounts due to VACC and Wells Fargo, and the estimated costs that would accrue during the time the appeal would likely be pending.

## CONCLUSION

Based upon the foregoing analysis, the Court finds the Debtors have failed to establish the first, third, and fourth prongs of the test for a stay pending appeal. First, the Debtors do not have a substantial possibility of succeeding on appeal of the Court's order finding the prepetition waiver enforceable (doc. # 41), which in turn severely limits any chance of successfully appealing the orders granting relief from stay to Wells Fargo and VACC. Moreover, the orders granting stay relief were soundly based on the additional and alternative grounds of § 362(d)(1), for failure to provide adequate protection, and § 362(d)(2), due to Debtors' lack of equity in the property and failure to show an ability to successfully reorganize within a reasonable time. On the third prong, Wells Fargo has demonstrated it will suffer substantial harm if the Court grants a stay, due to its continually eroding position relative to the senior priority lien of VACC. Regarding the fourth prong, while it is a difficult call, the Court's interest in enforcing the Settlement Agreement and instilling confidence in the fairness and predictability of chapter

19

12 relief, outweighs the public interest of assisting the Debtors in their reorganization efforts in this case, in light of the history of interactions between the Debtor and their creditors.

The Debtors have established they would likely suffer irreparable harm in the absence of a stay pending appeal, as the resulting foreclosure and sale of the Debtors' land may render the appeal moot. However, that "is not sufficient to overcome the weight accorded to the three other prongs of the test." In re DuCharme, 2008 Bankr. LEXIS 764, **10–11 (Bankr. D. Vt. 2008).

The Court has considered each of the factors in the test for granting a stay pending appeal, the record of this case, and the pertinent case law. Based upon that analysis, and for the foregoing reasons, the Court finds the Debtors have failed to meet their burden for a stay pending appeal of the Court's orders (i) finding the prepetition waiver to be valid, (ii) granting relief from stay to Wells Fargo, and (iii) granting relief from stay to VACC. It will enter an order implementing those determinations.

This memorandum constitutes the Court's findings of fact and conclusions of law with respect to the Debtor's motion for a stay pending appeal of the three orders described above.

April 23, 2018  
Burlington, Vermont

_____  
Colleen A. Brown  
United States Bankruptcy Judge