*Formatted for Electronic Distribution* *Not for Publication*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT

Filed & Entered
On Docket
February 8, 2019

_____

**In re:**
    **Robert & Tay Simpson,**
        **Debtors.**
_____

Chapter 12
Case # 17-10442

| | |
|---|---|
| *Appearances:*    Rebecca Rice, Esq.<br>Cohen & Rice<br>Rutland, Vermont<br>*For the Debtors* | Gary Franklin, Esq.<br>Primmer Piper Eggleston & Cramer<br>Burlington, Vermont<br>*For Wells Fargo Financial Leasing* |
| Bernard Lambek, Esq.<br>Zalinger Cameron & Lambek<br>Montpelier, Vermont<br>*For Vermont Agricultural Credit Corp.* | Jan M. Sensenich, Esq.<br>Office of the Chapter 12 Trustee<br>Norwich, Vermont<br>*For the Trustee* |

**MEMORANDUM OF DECISION**
**GRANTING CHAPTER 12 TRUSTEE'S MOTION TO RECONSIDER,**
**DETERMINING DEBTORS ARE NOT IN SUBSTANTIAL DEFAULT, AND VACATING DISMISSAL ORDER**

On January 14, 2019, the Court issued an order dismissing this chapter 12 case (doc. # 197, the "Dismissal Order"), based on the Notice of Substantial Default filed by Wells Fargo, pursuant to the conditional dismissal order the Court entered on July 13, 2018 (see doc. ## 194, 147, respectively). On January 18, 2019, the chapter 12 trustee filed a Motion to Reconsider the Dismissal Order (doc. # 199, the "Motion to Reconsider"). Vermont Agricultural Credit Corporation ("VACC") filed a memorandum in support of that Motion (doc. # 200). The Debtors also joined the Trustee's Motion (doc. # 206). Wells Fargo opposed it (doc. # 203). On January 25, 2019, the Court entered an order setting a February 5, 2019 hearing on the Motion to Reconsider and setting deadlines for the parties to file supplemental papers. For the reasons set forth below, the Court grants the Trustee's Motion to Reconsider, and in reconsidering the legal and factual record in this case and, in particular, the parties' representations in the supplemental filings and at the hearing on the Motion to Reconsider, the Court finds reconsideration is warranted, the Debtors are not in substantial default, and there is cause to vacate the Dismissal Order.

1

## JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered on June 22, 2012. The Court declares the Motion to Reconsider and Wells Fargo's objection create a contested matter which is a core proceeding for purposes of 28 U.S.C. § 157(b)(2)(A), over which this Court has constitutional authority to enter a final judgment.

## BACKGROUND

The Debtors and Wells Fargo have a long and tortured history of broken promises and acrimonious litigation (all of which is articulated at length in other orders, see doc. # 41, 97, so is not repeated here), which led to the Court's drafting and entering of a Conditional Dismissal Order (doc. # 147), which was likewise quite unique. That Order grants dismissal of the case if Wells Fargo demonstrates the Debtors have failed to meet their obligations under the confirmed plan. The Order was intended to strike a balance that protected the Debtors from having the case dismissed precipitously because of a single – and potentially insignificant – default that occurred because of circumstances beyond their control, while also protecting Wells Fargo from protracted litigation in this case if the Debtors' conduct fell short of fulfilling their duties under chapter 12 and their confirmed plan:

> THEREFORE, IT IS HEREBY ORDERED that Wells Fargo shall be entitled to an order of dismissal if the Debtors default on their obligations to Wells Fargo – either by failing to make a plan payment when due or failing to make a direct payment due to Wells Fargo when due – in a manner that constitutes a "Substantial Default." For purposes of this Order, a Substantial Default occurs when both conditions precedent occur, i.e. the Debtors default twice in a single Calendar Year[1] and cure the first such default, as further described below.
>
> 1. Upon the Debtors' first payment default in a Calendar Year:
>    (a) Wells Fargo may declare a default under the confirmed Plan.
>    (b) If it does so, it must file, and serve on the Debtors and their attorney, a Notice of that Default, and the Debtors shall have
>      (i) 7 days to file an affidavit disputing they are in default, or
>      (ii) 30 days to cure that default either by making the missing payment or by filing a motion to modify their plan that is ultimately granted by the court.
>    (c) If the Debtors fail to timely prove they were not in default and fail to timely cure the default, then Wells Fargo may file an Affidavit affirming the Debtors' default and failure to cure.
>      (i) If the Court finds the Debtors have failed to rebut the factual allegations of a Wells Fargo Affidavit, then Wells Fargo may seek to enforce its rights, in the ordinary course, including seeking dismissal of the case, other than on the basis of a Substantial Default.

---

[1] The Conditional Dismissal Order defined Calendar Year as the period from January 1 to December 31. The current calendar year, for instance, runs from January 1, 2019 to December 31, 2019. See doc. # 147 at n. 1.

  (d) If the Debtors demonstrate they did not default on their payment obligations to Wells Fargo, then the case shall not be dismissed and the foregoing series of events shall not constitute a condition precedent for relief based on a Substantial Default.
  (e) If the Court finds the Debtors defaulted on their payment obligations to Wells Fargo but sufficiently cured or modified as described above in paragraph 1(b)(ii), then the case will not be dismissed at that time, but this series of events shall constitute a condition precedent for dismissal based on a Substantial Default.

2. Upon the Debtors' second payment default in a Calendar Year:
  (a) Wells Fargo may declare a default under the confirmed Plan and seek a declaration that the Debtors are in Substantial Default.
  (b) If it does so, it must file, and serve on the Debtors and their attorney, a Notice of the alleged Substantial Default, and the Debtors shall have 7 days to file an Affidavit disputing they are in Substantial Default.
  (c) If the Debtors fail to demonstrate they did not default on their payment obligations to Wells Fargo for a second time during the Calendar Year, this series of events shall constitute the second condition and final precedent for a finding of Substantial Default and Wells Fargo may file a proposed Order Granting Dismissal without further notice or hearing.

Doc. # 147. The chapter 12 plan in this case was confirmed on July 13, 2018 (doc. # 145) and the Conditional Dismissal Order containing the foregoing language was entered on the same day (doc. # 147). Exhibit A to the confirmation order explained the complicated distribution of funds to the Debtors' creditors (from plan payments, direct payments, and sale proceeds) and set deadlines for the sale of certain real and personal property. Pertinent to this matter, Exhibit A required the Debtors to sell milking equipment by October 31, 2018, and projected the sale price would be $100,000, resulting in a (3%) commission to the Trustee in the amount of $3,000 and a $97,000 payment to Wells Fargo.

The Debtors did not meet the October 31, 2018 deadline for the sale of the Debtors' milking equipment (the "Equipment"). Instead, on that date, the Debtors, Wells Fargo, and the Trustee entered into a stipulation to amend Exhibit A to the confirmation order. Based upon the consent of all these parties, as well as VACC, the Court approved that stipulation by executing the "so ordered" provision at the end of the document (doc. # 180, the "Stipulation"). It is the following language of that Stipulation (the "Triggering Language") that is now at issue:

> Whereas the Exhibit A to the Confirmation Order Dated July 13, 2018 provides the sale of the milking parlor equipment shall occur prior to October 31, 2018 and although Debtors have buyers for the milking parlor equipment, but [sic] the sales have not occurred, it is agreed as follows:
> The Milk tanks shall be sold on Nov. 9th for $28,000,

3

> The Debtors and the purchaser of the Parlor equipment shall enter into a contract and obtain a Deposit on the Parlor equipment by Nov. 19th with sale for $80,000 to close by December 31, 2018.
>
> No further extension or modifications to terms will be given and that failure to abide by these terms and conditions will be deemed a default allowing WF to seek dismissal upon failure to cure, and failure to meet any future deadlines or payment provisions will be deemed a second event of default within the same calendar year as specified in the Court's Conditional Order of Dismissal dated July 13, 2018.

Doc. # 180.[2]

Wells Fargo filed a Notice of Substantial Default, based upon the Debtors' failure to comply with the requirements of the Stipulation, and specifically this Triggering Language. On January 14, 2019, the Court issued an order dismissing the case based upon that assertion of Substantial Default, and on January 18th, the chapter 12 trustee filed a Motion to Reconsider the Dismissal Order, arguing Wells Fargo, and the Court, misinterpreted the Stipulation and erroneously concluded dismissal was proper.

## DISCUSSION

### I. THE TRUSTEE'S MOTION FOR RECONSIDERATION

The Court first considers whether reconsideration is warranted. See Fed. R. Bankr. P. 9024, incorporating Fed. R. Civ. P. 60. The Trustee, VACC, and the Debtors assert the Court made an error in its interpretation of the Stipulation, and in reliance on that misinterpretation erroneously entered the Dismissal Order, and manifest injustice will occur if the Dismissal Order is not vacated. In support of his manifest injustice argument, the Trustee points out how much the Debtors are paying, and how many of their assets they are liquidating, in order to pay their creditors – and end the litigation with Wells Fargo – through this chapter 12 case. The Debtors and Wells Fargo have been engaged in acrimonious litigation since at least 2012, and this is the Debtors' second attempt to reorganize their family farm since 2012.[3] This is a 60-month repayment plan that includes the sale of a substantial amount of the Debtors' land and equipment. The Debtors are now in the first year of that plan, they are current on their monthly plan payments to the Trustee, and have thus far generated sale proceeds in the amount of approximately $823,500, for the benefit of their creditors. If the Debtors complete their plan, the record indicates they will pay approximately $1.8 million to their creditors through this case. To date, the Debtors have paid Wells Fargo approximately $250,000, through their chapter 12 case, with approximately $185,000 flowing from their sales of real estate. The Debtors' monthly plan payment, currently set at $6,000, is also

---

[2] All capitalized terms in this decision have the same meaning as in the Stipulation.
[3] In this case alone, the Debtors and Wells Fargo have engaged in litigation and chapter 12 hearings which have resulted in allowed legal fees to Wells Fargo in the amount of $95,205.90 (doc. # 190).

4

directed in its entirety, after deducting the Trustee's commission, to Wells Fargo. Based on these considerations, the Trustee contends, to deprive the Debtors the right to continue their efforts in chapter 12, under circumstances that appear to be based on a genuine misunderstanding of the Stipulation's requirements, would be manifestly unjust.

Bankruptcy courts have the inherent equitable power to reconsider, modify, or vacate their previous orders, including those approving settlement agreements. See BII Inc. v. Chapter 7 Trustee for IBI Sec. Serv. (In re IBI Sec. Serv.), 133 F.3d 205, 209–10 (2d Cir. 1998) (finding bankruptcy court has the power to reverse its prior orders pursuant to its equitable powers, including modifying orders approving stipulations entered into by parties to a bankruptcy); see also Metro. Estates, Inc. v. Emmons-Sheepshead Bay Dev., LLC (In re Emmons-Sheepshead Bay Dev., LLC), 662 Fed. Appx. 100, 103 (2d Cir. 2016) (finding bankruptcy courts empowered under Federal Rules 59(e) and 60(b) to "alter or amend judgment to correct a clear error of law or prevent manifest injustice" or to grant relief from a judgment on specific grounds such as mistake, inadvertence, surprise, or excusable neglect.) Under the circumstances of this case, and particularly the herculean efforts the Debtors have made in this case to obtain confirmation of their plan, to liquidate their farm assets to pay creditors, and to make their monthly payments, the Court finds if this case were dismissed based on a misunderstanding of the terms of the parties' agreement, it would result in manifest injustice. See Fed. R. Civ. P. 60(b)(6); Fed. R. Civ. P. 59(e). Additionally, in reviewing the Stipulation, in light of the memoranda of law the parties have filed and the arguments the parties presented at the hearing, the Court is persuaded it erred in not discerning the ambiguity of the terms of the Stipulation prior to approving it,[4] which resulted in it entering the Dismissal Order without a hearing. Accordingly, reconsideration is also warranted under Rule 60(b)(1).

**II. WHETHER THE DEBTORS WERE IN SUBSTANTIAL DEFAULT AND DISMISSAL WAS WARRANTED**

Having determined reconsideration is warranted, the Court turns to the merits of the Trustee's Motion and the questions of whether the Debtors are in Substantial Default, as that term has been defined in this case, see doc. # 147, and whether dismissal was warranted.

The Trustee, with support from VACC and the Debtors, argues that the Stipulation's words, "failure to abide by these terms and conditions" in the plural, being described as "a default," in the singular, indicate that Wells Fargo may only declare a single default with respect to the sale of the equipment, see doc. # 180 (emphasis added). These parties also point to the description of the remedy in the Stipulation for such a default, namely "allowing WF to seek dismissal upon failure to cure" as

---

[4] The time has passed for reconsideration of the Stipulation and therefore reconsideration is limited to the Dismissal Order.

5

consistent with this reading because that right to cure is only available in connection with a first default in a Calendar Year. This interpretation is persuasive, but it is not the only reasonable reading of the Stipulation.

When the parties filed the Stipulation, the Court read it to create two distinct deadlines, one for the sale of the milk tanks and one for the sale of the Parlor equipment. Hence, when the Debtors missed the milk tank sale deadline, they were in default, and when they missed the Parlor equipment deadline, the Court perceived them to be in Substantial Default. Wells Fargo conducted itself as if it read the Stipulation this way as well: it issued a notice of default on November 20, 2018, when it learned the Debtors had not sold the milk tanks by November 9th, as required by the Conditional Dismissal Order (doc. # 194, p. 7). It thereafter issued a notice of Substantial Default based on the Debtors' failure to obtain a contract and deposit on the Parlor equipment by November 19, 2018 or close on that sale by December 31st (doc. # 194, p. 10).

Having reviewed the Triggering Language again, in response to the memoranda of law filed in support of the Trustee's Motion, the Court finds the Triggering Language to be ambiguous. "A word or phrase is ambiguous when it is capable of more than a single meaning when viewed objectively by a reasonably intelligent person who has examined the coextension of the entire integrated agreement and who is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business." Garza v. Marine Transport Lines, 861 F.2d 23, 27 (2d Cir. 1988); see also Isbrandtsen v. North Branch Corp., 150 Vt. 575, 577 (Vt. 1988) ("A provision in a contract is ambiguous only to the extent that reasonable people could differ as to its interpretation."). Here, the Triggering Language refers to "these conditions" (plural) and says failure to satisfy those multiple conditions would be "a default" (singular), and goes on to say "any future defaults within the same calendar year" would be a basis for dismissal pursuant to the Conditional Dismissal Order.

There are now four issues before the Court with the respect to the text of the Stipulation: First, does each of the four deadlines specified in the first paragraph[5] constitute an independent basis for declaration of a default, or is sale of the Equipment a single obligation which can only give rise to the declaration of a single default? Second, if it is the latter, then under the description of default in the second paragraph of the Triggering Language, when did the default occur? Third, does the first phase of the Triggering Language represent an agreement that the Debtors will be absolutely bound by – and have no right to extend – the deadlines set forth in the Stipulation, or only that Wells Fargo will not consent to

---

[5] The four deadlines, in sequential order, are sale of milk tanks by November 9th, contract for sale of Parlor equipment by November 19th, deposit for Parlor equipment by November 19th, and sale of Parlor equipment for $80,000 by Dec. 31, 2018.

6

any such requests for extension or modification of those deadlines? Fourth, does the last phrase of the Triggering Language preclude the Debtors from having any first, curable default in subsequent Calendar Years, over the remaining term of the plan, such that any default after a default under the Stipulation would constitute a basis for declaring a Substantial Default, and thus entitle Wells Fargo to dismissal of the case without any further notice or hearing? The parties addressed the former two issues in their memoranda of law, they touched upon the third issue in their papers, and they appeared to become aware of the fourth issue at the hearing.

Based on the record before the Court, it is apparent the Trustee, the Debtors, and VACC (the "Moving Parties") have a different understanding of the Stipulation than Wells Fargo does. Within the framework of the four issues, the Moving Parties persuaded the Court they understood the Stipulation to mean the following:

1. like Exhibit A, the Stipulation could give rise to just one default, governed by whether the Debtors sold all the milking equipment by the latest deadline set, i.e., December 31, 2018;

2. under the facts here, the Debtors' default occurred on January 1, 2019 (immediately after they failed to meet the December 31, 2018 sale closing obligation), and in compliance with the Conditional Dismissal Order, they filed a timely motion to modify, in order to cure that default, pursuant to par. 1(b) of the Conditional Dismissal Order;

3. Wells Fargo would not agree to any further extensions of the deadline for sale of the milking equipment and therefore the Debtors would need to file a motion and persuade the Court in order to get any such extension; and

4. if the Debtors (i) failed to sell the milk tanks by November 9, 2018, or secure a contract and deposit for the sale of the Parlor Equipment by November 19th, and (ii) subsequently failed to make the November or December plan payment when due, that missed plan payment would constitute a "future default" for purposes of the 2018 Calendar Year, i.e., it would satisfy the condition precedent for declaration of a Substantial Default in 2018.[6]

By contrast, Wells Fargo's attorney convinced the Court he bargained for, and understood, the Stipulation to encompass, the following terms:

1. in contrast to Exhibit A, the Stipulation created several articulated deadlines, each of which could give rise to a separate event of default, thus enabling the Debtors to go into Substantial Default if they failed to meet any two of the deadlines with respect to sale of the Equipment;

---

[6] Under the Moving Parties' interpretation, the Debtors' failure to adhere to any of the earlier deadlines in the Stipulation (i.e. selling the milk tanks by November 9th or securing a contract and deposit on the Parlor equipment by November 19th) would essentially create a "continuing" single default, allowing that default under the Stipulation to constitute a condition precedent for Substantial Default that could conceivably apply in either the 2018 or 2019 Calendar Year. In other words, while the Debtors would not be required to cure their single default under the Stipulation until the last deadline passed on December 31, 2018, that initial failure to adhere to the Stipulation's deadlines could be relied on by Wells Fargo as a basis for Substantial Default in 2018 if the Debtors missed another deadline or payment provision, unrelated to the Stipulation, before December 31st. In the Moving Parties' view, Wells Fargo's reliance on an additional missed deadline within the Stipulation (as opposed to an unrelated missed payment or deadline) is misplaced, and is not a basis for declaring a Substantial Default.

7

2. the Debtors' first default occurred on November 10, 2018 (immediately after they failed to sell the milk tanks on November 9th) and they cured that default by selling the milk tanks and delivering the net proceeds to Wells Fargo shortly thereafter; and the Debtors' second default occurred on November 20th (immediately after the Debtors failed to obtain either a contract or deposit for the sale of the Parlor equipment by November 19th) – and Wells Fargo served a notice of each default, see doc. # 194, p. 7, 10;

3. the Debtors waived their right to seek – or obtain – any further modification or extension of the deadlines for sale of the Equipment, thus ensuring that if the Debtors did not meet the deadlines set in the Stipulation, Wells Fargo would be entitled to dismissal of the case, without further notice or hearing; and

4. if the Debtors defaulted under any one of the deadlines in the Stipulation, that would be the only default they would have the right to cure, and any subsequent default, of any obligation under the plan, during the 60-month term of the plan, no matter how many years later, would be construed as being within the same Calendar Year as the Equipment sale default, thus denying the Debtors the right to one default-and-cure opportunity during each Calendar Year of the plan, as the Conditional Dismissal Order had provided.

Unfortunately, since the Debtors filed the Stipulation saying they, the Trustee, and Wells Fargo had reached an accord, and all parties filed electronic consent to the Stipulation, the Court deduced that the parties all understood the Stipulation to have the same meaning. Likewise, when the Debtors did not file an affidavit disputing the accuracy of Wells Fargo's representation of facts justifying a declaration of default in either the Notice of Default or Notice of Substantial Default, the Court concluded there was no dispute as to the fact of either default and entered the Dismissal Order. Wells Fargo argues the Moving Parties' failure to act upon or respond to either notice of default should be interpreted as a waiver of their rights to reopen or oppose dismissal at this time. The Court finds that argument unavailing. As a preliminary matter, the Conditional Order of Dismissal identifies only the Debtors as having the right to respond with an affidavit disputing the fact of default and, moreover, gives the Debtors the option of either disputing the fact of default within 7 days or taking steps to cure the default within 30 days. Here, the Debtors acknowledge they were in default of their obligation to sell the milk tanks by November 9th, so they had no basis to dispute the default and knew it would be addressed imminently so saw no need to respond. And, there is no dispute that the Debtors timely addressed the November 9th default by completing the sale of the milk tanks for $28,000, and delivering the net proceeds to Wells Fargo, before the end of November (doc. # 196). The Court finds that to be a sufficient and sound response. The Debtors' argument with respect to the second notice, the notice of Substantial Default, is less solid but nonetheless credible. The Debtors' attorney argues that since she was absolutely convinced the Stipulation did not authorize more than a single declaration of default related to sale of the Equipment, when the Debtors missed the deadline for the contract and deposit for sale of the Parlor equipment (and knew they

8

would consequently miss the deadline for the sale of that equipment), they believed they needed to cure by filing a motion to modify, as specified in the Conditional Dismissal Order, and did so. It appears the Debtors' counsel believed filing that motion to modify was tantamount to admitting the default, acting to cure, and demonstrating this was a first default. There is no question the Debtors' position would have been abundantly clearer to Wells Fargo, the Court, and all parties, if the Debtors' attorney had filed an affidavit disputing Wells Fargo's factual allegation that a Substantial Default had occurred, and explaining the Debtors' position that only a single default could arise from the Stipulation, and pointing out they had timely filed a cure document, consistent with the Conditional Dismissal Order. However, the Court will not engage in 20-20 hindsight here where it is now quite clear the Moving Parties and Wells Fargo were conducting themselves based on sharply contrasting understandings of the Stipulation.

The Second Circuit has given guidance on how Courts should approach interpretation of ambiguities in orders that are entered based on a settlement among parties: "Like consent decrees, settlement agreements are 'hybrid' in the sense that they are at once both contracts and orders; they are construed largely as contracts, but are enforced as orders. As contracts, we interpret them in accordance with general principles of contract law." Rothstein v. Am. Int'l Grp., Inc., 837 F.3d 195, 205 (2d Cir. 2016). See also Doe v. Kogut, 2019 U.S. App. LEXIS 1030, *2 (2d Cir. 2019) ("A settlement agreement is a contract that is interpreted according to general principles of contract law.").

Unless there is a federal jurisdiction issue involved in the creation of the agreement, a federal court must determine whether an agreement was reached under applicable state law. See, e.g., In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 134 (2d Cir. 2011) ("[A]ctions to enforce settlement agreements are essentially state-law contract claims."); United States v. Prevezon Holdings, Ltd., 289 F. Supp. 3d 446, 450 (S.D.N.Y. 2018); Frenkel v. New York City Off-Track Betting Corp., 611 F. Supp. 2d 391, 396–97 (S.D.N.Y. 2009). The same holds true in the bankruptcy court's enforcement of settlements. See, e.g., Seaport Capital Partners, LLC v. Speer (In re Speer), 558 B.R. 67, 72 (Bankr. D. Conn. 2016) (applying Connecticut contract law to determination of whether settlement agreement existed). "Claims regarding interpretation of the terms of settlement agreements … are controlled by the forum state's substantive contract law." In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig., 2014 U.S. Dist. LEXIS 131315, *13 (S.D.N.Y. 2014); see also Kennedy Inn Assocs. v. Perab Realty Corp. (In re Kennedy Inn Assocs.), 221 B.R. 704, 709 (Bankr. S.D.N.Y. 1998). Following this guidance, the Court will employ Vermont contract law to interpret the meaning of the Stipulation.

The Court is cognizant it could, on this record, determine there was no meeting of the minds here, as is required for a binding contract, and vacate the Stipulation on that basis. See Starr Farm Beach

9

Campowners Ass'n v. Boylan, 174 Vt. 503, 505 (Vt. 2002) ("An enforceable contract must demonstrate a meeting of the minds of the parties: an offer by one of them and an acceptance of such offer by the other."). However, it declines to do so on both procedural and substantive grounds. First, the Stipulation is also an order and no one filed a timely motion to reconsider it. On the merits, rescission of the Stipulation would be inappropriate and have no practical effect because the parties would find themselves in a position where the Debtors had not met the deadline for selling the Equipment and would be seeking a modification of the plan and confirmation order to extend that deadline, which is, in fact, precisely where the case stands at this time. The district court in Kansas addressed a similar issue in a chapter 12 case, on appeal, in 1994. In In re Mettlen, 174 B.R. 822 (Bankr. D. Kan. 1994), the bank moved to vacate a settlement agreement it had reached with the debtors, under which the debtors were to make either a $100,000 lump sum cash payment to the bank, or make an $80,000 lump sum cash payment and surrender certain equipment worth $20,000 to the bank. In either event, the debtors were to make the lump sum cash payment "promptly." The bankruptcy court granted the bank's motion to vacate the agreement based on the debtors' failure to fulfill his payment obligation and the district court reversed. Like here, the debtors were in default under certain promises they had made to the bank in the settlement agreement but the equipment that was to be sold under their agreement had already been sold. The district court relied on several grounds including the state law's favoring of settlement of disputes in upholding the agreement. Vermont law also favors settlements. See, e.g., Dutch Hill Inn v. Patten, 131 Vt. 187, 192 (Vt. 1973) ("Public policy, however, strongly favors settlement of disputed claims without litigation."). The Mettlen court also observed that although the debtor had breached the agreement by not yet paying the $80,000, this "did not amount to a refusal to perform … and they [could] not be restored to the status quo ante" since the equipment was gone. Mettlen, 174 B.R. at 825 (emphasis original). Even if this Court were to find no meeting of the minds underlying the Stipulation, the equities would not support rescission of that agreement since (i) that outcome could significantly damage and delay administration of the case by distracting the Debtors from their farming operations and efforts to sell the remaining Equipment, (ii) the Debtors have acted in good faith in implementing the terms of the Stipulation by selling some of the Equipment (and for a higher price than had been projected), (iii) those sales cannot be undone at this time, and (iv) rescinding the Stipulation would not substantively alter the procedural posture of the case (awaiting a hearing and ruling on the Debtors' motion to modify). See Smith v. Munro, 134 Vt. 417, 420 (Vt. 1976) ("Where the parties cannot be placed in status quo, cancellation or recession is never directed unless demanded by the clearest and strongest equity." (citing Lariviere v. Larocque, 105 Vt. 460, 469

10

(Vt. 1933)). Rather, the Court deems it most appropriate and fair to treat the Stipulation as ambiguous and fashion a remedy short of rescission of that contract.

If a writing "appears to be plain and unambiguous on its face, its meaning must be determined from the four corners of the instrument without resort to extrinsic evidence of any nature," and "[a] provision in a contract is ambiguous only to the extent reasonable people could differ as to its interpretation." Isbrandtsen v. North Branch Corp., 150 Vt. 575, 577–78 (Vt. 1988). Based upon its recent review and the parties' contrasting, but reasonable, understandings of the Stipulation, the Court finds it is subject to more than one understanding and therefore is ambiguous. Accordingly, the Court looks beyond the four corners of the document to determine its meaning. See New Eng. P'Ship v. Rutland City Sch. Dist., 173 Vt. 69, 77 (Vt. 2001) ("Extrinsic evidence may be introduced to aid in the construction of a written instrument once an ambiguity has been found.").

In construing the Triggering Language, the Court finds the best interpretation is that any, or multiple, missed deadlines related to the sale of the subject Equipment only constitute a single default. This is so, first, because the words themselves convey this meaning: The Stipulation says "Failure to abide by these terms and conditions [plural] will be deemed a default [single]." Additionally, when construing ambiguous language, the Court should consider its meaning in the context of related, salient documents. That leads the Court to look at both the plan and Exhibit A (doc. ## 145, 180). See In re Sims, 358 B.R. 217, 224 (Bankr. E.D. Pa. 2006) ("'Where the words employed to express some particular term of a contract are ambiguous … and the parties have made other contracts in respect of the same subject matter, apparently in pursuance of the same general purpose, it is always permissible to examine all of them together in aid of the interpretation of the particular term.'") (quoting Williston on Contracts §§ 30:26 (West 2006))). In both the confirmation order and Exhibit A, there was a single deadline for the sale of the Debtors' milking equipment. This weighs in favor of adopting the Moving Parties' position. Moreover, when interpreting the Calendar Year default computation, the Court looks to the Conditional Dismissal Order (doc. # 147). Wells Fargo's position, that the Debtors waived their right to ever cure a default going forward, would be a significant modification of the Conditional Dismissal Order and there is nothing in the caption or text of the Stipulation to indicate it was modifying the Conditional Dismissal Order.[7] Finally, a key inquiry is which party drafted the ambiguous language, since contract principles require that ambiguous provisions be construed against the party who drafted them. See In re Sims, 358 B.R. 217, 224 (Bankr. E.D. Pa. 2006) (holding "any doubt concerning the meaning … must be construed

---

[7] Though not determinative, the Court also observes that the emails the parties referred to during the hearing, and which are attached to the papers, see doc. ## 194, 205, include no indication the parties intended to modify anything other than Exhibit A

11

against the debtor, the drafter of the plan."); see also State v. Spitsyn, 174 Vt. 545, 547 (Vt. 2002) ("[W]here a contract is ambiguous, it will be construed against the party who drafted it.") (citing State v. Murray, 159 Vt. 198, 205 (Vt. 1992))). The record shows – and Wells Fargo has not disputed – that Wells Fargo's counsel drafted and presented the Triggering Language to the Debtors' attorney, and the Debtors' attorney included it *verbatim* in order to obtain Wells Fargo's consent to the Stipulation. Hence, this a further basis for construing the ambiguous terms consistent with the understanding and intent the Debtors and Trustee had when they entered it.

Having found that the Stipulation should be construed as creating the possibility of only a single default based on sale of the Equipment and, based on the Debtors' admission of a default under the Stipulation, the Court turns to a determination of the date of their default. "When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court." Restatement (Second) of Contracts § 204. Federal courts and the Vermont Supreme Court have resorted to supplying omitted material terms where the situation warrants such an approach under § 204. See, e.g., Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp., 559 U.S. 662, 685 (2010) (citing § 204 as a "background principle" allowing the Court, or an arbitrator, to supply a term which is reasonable in the circumstances); Best Brands Beverage v. Falstaff Brewing Corp., 842 F.2d 578, 588 (2d Cir. 1987) ("[T]here can be no contract if the parties have failed to agree on all essential terms, … and if the missing terms cannot be supplied through reasonable construction that is consistent with the parties intent.")(internal quotations and citations omitted)); Gade v. Chittenden Solid Waste Dist., 187 Vt. 7, 20 (Vt. 2009). Here, the Court's interpretation of the Stipulation, as creating only the potential for a single default, does not resolve whether the parties intended the default to occur (a) immediately after the earliest missed deadline (i.e., November 10th ) or (b) immediately after the latest deadline missed, or (c) when all the deadlines described in the Stipulation have passed (i.e., January 1, 2019) regardless of which deadline(s) was missed, or when Wells Fargo issued the notice of default. Since Wells Fargo had a different interpretation of the Stipulation and because it sent two notices of default, the latter option is not viable here. Traditional contract interpretation does not yield an answer as between the two remaining approaches. Therefore, the Court may employ § 204 and "supply a term which comports with community standards of fairness and policy." See Comment (d) of Restatement (Second) of Contracts § 204; Stolt-Nielsen, 559 U.S. at 685; Best Brands, 842 F.2d at 588.

Under the particular facts and circumstances of this case, the Court supplies the missing term, defining the date of default where the Debtors failed to sell the Equipment according to all the

requirements of the Stipulation, and determines the (single) default under the Stipulation occurred on January 1, 2019. In reaching this conclusion, the Court relies on several key factors. The Court may construe the meaning of the Stipulation by reference to other documents. See Williston on Contracts §30:26. Here, the confirmed plan and its Exhibit A are probative to this interpretation. In the confirmed plan the sale of the equipment had one deadline to sell all the milking equipment – and hence one opportunity for a default based on the Equipment sale. If the Court reads the Stipulation as Wells Fargo urges, the Debtor would be subject to four distinct deadlines – and hence four opportunities for default. To be consistent with those critically related documents, the Stipulation should set the deadline for satisfying this obligation as the date by which the Debtors must sell all the milking equipment, i.e., by December 31, 2018.[8] Additionally, January 1, 2019 is the date the Debtors acknowledge they fell into default under the Stipulation, pursuant to the terms of the Conditional Dismissal Order – and is both most consonant with the framework of that Order and most beneficial to Wells Fargo. Using this date as the date of default also gives the best effect to the language "failure to meet any deadlines or payment provisions will be deemed a second event of default within the same calendar year as specified in the conditional dismissal order." As the single default occurred on January 1, 2019, the Debtors' failure to meet any deadlines or payment provisions in 2019 will in fact be a second event of default within the same Calendar Year.[9] In accord with this determination, the Court rejects Wells Fargo's contention that this default carries forward as the first default for the remaining terms. This is a first default for Calendar Year 2019 only.

## CONCLUSION

Having found the ambiguous language of the Stipulation is most accurately and reasonably read to create a single default if all the Equipment sale deadlines in the Stipulation were not met, and any default under the Stipulation would be effective as of January 1, 2019 unless there was an intervening unrelated default, the Court finds the Debtors defaulted in their obligations under the Stipulation on January 1, 2019, this was their first default in this Calendar Year (2019), the Debtors are not in Substantial Default under the terms of the Conditional Dismissal Order, and the Debtors' filing of a motion to modify their confirmed plan (doc. # 192 the "Motion to Modify") on December 31, 2018, was within the time frame

---

[8] The Court acknowledges that having several deadlines in the Stipulation makes the declaration of a single default rather awkward, but it will not make any more modifications to the Stipulation than are absolutely necessary to move forward and assess whether the Dismissal Order was entered in error.

[9] See also supra n. 6 for an explanation as to how the Debtors' failure to adhere to the earlier, initial deadlines within the Stipulation could have formed the basis for Substantial Default in 2018 if the Debtors had missed a payment or deadline unrelated to the Stipulation.

authorized by the Conditional Dismissal Order.

Therefore, the Court grants the Motion to Reconsider, declares the Debtors are not in Substantial Default under the terms of the Conditional Dismissal Order, and vacates the Dismissal Order.

This memorandum constitutes the Court's findings of fact and conclusions of law.

February 8, 2019  
Burlington, Vermont

*Colleen A. Brown*  
Colleen A. Brown  
United States Bankruptcy Judge